BANK OF CALIFORNIA, Executor of
the Estate of Daisy Manning,
Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 80–5904.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 8, 1982.

Decided March 24, 1982.

Paul Shimoff, Surr & Hellyer, San Bernardino, Cal., for plaintiff-appellant.

Kristina Harrigan, Dept. of Justice, Washington, D.C., argued, for defendant-appellee; Daniel F. Ross, Helen M. Marinak, Dept. of Justice, Washington, D.C., on brief.

Before PREGERSON and FERGUSON, Circuit Judges, and ORRICK,* District Judge.

PREGERSON, Circuit Judge:

The controversy in this estate tax case centers around the proper method of valuing a charitable remainder in computing the

* Honorable William H. Orrick, Jr., United States District Judge, for the Northern District of California, sitting by designation.

deduction available to a decedent's estate under I.R.C. § 2055, 26 U.S.C. § 2055. The specific question presented is whether, in computing this deduction, the life expectancy of a life tenant suffering from an undiagnosed terminal cancer should be measured by actuarial tables or by his actual date of death. We affirm the district court's conclusion that it was proper for the government to rely on actuarial tables. We also affirm the district court's denial of appellant's claimed deduction for administrative expenses incurred in the preparation of its Claim for Refund.

## I. BACKGROUND:

By her will, Daisy Manning (Decedent) left her son Victor Geary (Victor) a life estate interest in a charitable remainder unitrust.[1] Under I.R.C. § 2055 (26 U.S.C. § 2055), Decedent's estate is entitled to a charitable deduction equal to the value of the remainder interest of the charitable beneficiaries.

In this case, the date of Decedent's death is the relevant date for valuation of the charitable remainder.[2] The values of both the life estate and the remainder are dependent on the life tenant's life expectancy—the shorter the life tenant's life expectancy, the greater the value of the charitable remainder.

When Decedent died, Victor was sixty-four years old. Appellant Bank of California, Executor of Decedent's estate ("Executor") initially calculated Victor's life expectancy—and thus, the value of the remainder interest—on the basis of actuarial tables provided in applicable Treasury Regulations. According to those calculations, the estate was entitled to a charitable deduction of $114,543, and owed federal estate taxes of $18,308.

Victor in fact died three days after the estate tax return was filed—a mere nine months after Decedent's death. Ventricular fibrillation was the immediate cause of his death and the parties stipulated that he had suffered from heart disease since 1969. At the time of his death, Victor also suffered from multiple myeloma, an incurable and fatal form of cancer. That diagnosis was not made until six months after Decedent's death, but Executor claims that the condition existed undiscovered when Decedent died and that Victor then had only a short time to live.

After Victor's death, Executor sought a tax refund, asserting that Victor's actual date of death, rather than the date projected by the actuarial tables, should be used to value the charitable remainder. Applying that approach, the charitable remainder would be valued at $183,735 and the federal estate tax payable would be only $2,125. The estate would therefore be entitled to a $16,183 refund.

## II. Valuation of the Charitable Remainder

██ As a general rule, actuarial tables are used to value charitable remainders in a unitrust. The tables focus on the age and sex of the life tenant to make the proper allocation of the gift between the life estate and remainder interests. *See* table LN, paragraph (f) of Section 20.2031–10 of the Federal Estate Tax Regulations, 26 C.F.R. § 1.664–4(a). A decedent's estate can claim the value of the charitable remainder as a charitable deduction under I.R.C. § 2055 (26 U.S.C. § 2055).

 Any party contending that the actuarial tables are inapplicable bears the burden of proving why the court should deviate from those tables. *Estate of Christ v. C.I.R.*, 480 F.2d 171, 172–73 (9th Cir. 1973). Courts will permit substitution of

---

**1.** Trusts that meet the specific requirements of I.R.C. § 644 qualify as charitable remainder unitrusts and are exempt from income taxes. 26 U.S.C. § 664.

**2.** The executor of an estate may value the assets of the estate as of the date of the decedent's death or, with respect to property not

distributed or otherwise disposed of, as of the date six months after the decedent's death. 26 U.S.C. § 2032. The Executor in the instant case elected the date of Decedent's death for valuation purposes when it filed the estate tax return.

actual life expectancy for actuarial life expectancy only in "exceptional" cases. *Continental Ill. Nat'l Bank & Trust Co. of Chicago v. United States,* 504 F.2d 586 (7th Cir. 1974) and cases cited therein. In the majority of cases permitting departure from the tables, the life tenant's maximum actual life expectancy was one year or less. Furthermore, the fatal condition not only existed, but was *known to exist* when the gift was made. *See Estate of Nellie H. Jennings,* 10 T.C. 323 (1948) (life tenant was almost totally paralyzed, had a complete loss of memory and was described by his physician as "just an individual protoplasm"); *Estate of Nicholas M. Butler,* 18 T.C. 914 (1952) (life tenant had cancer and "[t]he facts in existence at the time of [the transferor's] death were such as to render it certain that the life tenant would not live more than one year after [the transferor's] death." *Id.* at 919–20.)

■ The mere fact that a life tenant is suffering from an incurable fatal disease is not by itself enough to justify departure from the actuarial tables.[3] A recent Revenue Ruling, 80–80, analyzes the relevant case law and concludes that:

> the current actuarial tables in the regulations shall be applied if valuation of an individual's life interest is required for purposes of the federal estate or gift taxes *unless* the individual is *known* to have been afflicted, *at the time of the transfer,* with an incurable physical condition that is in such an advanced stage that death is clearly imminent. (Emphasis added.)

This approach is sound. It reflects an important principle enunciated throughout the cases: actuarial tables provide a needed degree of certainty and administrative convenience in ascertaining property values and prove accurate when applied in large numbers of cases, although discrepancies inevitably arise in individual cases. *See Continental Illinois, supra* at 593–94. At the same time, the Service's approach allows flexibility in such extraordinary situations as existed in the *Jennings* line of cases.

■ The Executor argues that Revenue Ruling 80–80 mandates rejection of the actuarial tables and evaluation of Victor's actual life expectancy. This argument is without merit because it ignores the clear statement of the Ruling that the life tenant must be *known* to be afflicted at the time of the transfer with an incurable condition so advanced that death is clearly imminent. Victor had two illnesses, heart disease and cancer. The heart disease was known to exist at the time of the transfer, but had existed for many years and could not be said to make death imminent. The cancer might have been advanced enough to make death imminent, but its existence was unknown when the gift was made at Decedent's death. Therefore, neither disease mandates deviation from the actuarial tables.

### III. Deduction of Administrative Expenses

■ I.R.C. § 2053(a) allows the deduction of estate administration expenses from the value of the gross estate. Treasury Regulation Section 20.2053(c)(2) permits an estate to deduct attorneys fees incurred in prosecuting a Claim for Refund. The estate must prove that the fees and expenses claimed were reasonable and actually paid.

Because of a failure to comply with Local Rules governing Pre-Trial Memoranda, strictly enforced by the district judge, the Executor was precluded from introducing evidence to show that the fees and expenses claimed were reasonable and actually paid. In the circumstances presented, we are unable to say that the district judge abused his discretion.

CONCLUSION: The district court's judgment is AFFIRMED.

---

**3.** In *Estate of Chauncey Stillman,* 24 T.C.M. 478 (1965), actuarial tables were correctly applied even though the life tenant died of multiple myeloma within a few months of the gift. In that case, as in the instant case, the life tenant had health problems when the transferor died, but the cancer itself had not yet been diagnosed.