T.C. Memo. 2001-170

UNITED STATES TAX COURT

ESTATE OF GLADYS J. COOK, DECEASED,
VERNA LEE STEELE, EXECUTRIX, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15284-99.                    Filed July 9, 2001.

John W. Porter, Walker Arenson, and S. Stacy Eastland, for
petitioner.

Lillian D. Brigman and Richard T. Cummings, for respondent.

MEMORANDUM OPINION

GERBER, Judge:  Respondent determined a deficiency of

$873,544 and a penalty under section 6662[1] of $168,999 in the

_____

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the date of decedent's
death, and all Rule references are to the Tax Court Rules of
Practice and Procedure.

Federal estate tax of the Estate of Gladys J. Cook, Deceased (the estate), Verna Lee Steele, executrix. The facts in this case have been fully stipulated under Rule 122, and only one issue is left for our consideration. After concessions, the issue concerns the value at decedent's date of death of her interest in a limited partnership. In particular, we must decide whether a limited partnership's right to receive 19 annual installment payments of lottery winnings must be valued in accord with the private annuity tables in section 20.2031-7, Estate Tax Regs. (annuity tables).

The Lottery Payments

At the time of her death, Gladys J. Cook (decedent) resided in Johnson County, Texas, where her will was probated. Decedent regularly purchased lottery tickets to participate in the Texas Lottery (the lottery). Decedent and her former sister-in-law, Myrtle Newby (Newby), had a longstanding informal agreement under which they jointly purchased lottery tickets and shared the winnings.

On July 8, 1995, decedent purchased a winning lottery ticket, the face value of which was $17 million, payable in 20 annual installments (lottery payments). Thereafter, pursuant to the informal sharing arrangement, the State of Texas was obligated to make lottery payments to decedent and Newby. The initial lottery payment of $858,648 was made on July 10, 1995,

and subsequent installments of $853,000 were payable on July 15 of each of the next 19 years.

Texas law provided that lottery prizes payable in installments could not be transferred without a court order or converted to a lump sum at any time. No market existed in Texas for lottery prizes payable in installments. No risk of default or delay encumbered the lottery payments, which were funded through the purchase of investments in U.S. Government bonds.

The Partnership

On July 12, 1995, decedent and Newby converted their informal sharing arrangement to a formal limited partnership, MG Partners, Ltd. (the partnership). The lottery ticket was assigned to the partnership by decedent and Newby, and each received a 2-percent general partnership interest and a 48-percent limited partnership interest.

Decedent died unexpectedly on November 6, 1995 (the valuation date); her interests in the partnership were still intact. The partnership's assets on the valuation date were the right to receive 19 future lottery payments and the current holding of $391,717 in cash.

The Estate Tax Return and the Notice of Deficiency

The estate's Federal estate tax return was filed with the Internal Revenue Service at Austin, Texas, on August 5, 1996. The estate reported a tax liability of $266,269. Decedent's

interests in the partnership were included in the gross estate at a value of $1,529,749, the amount opined by the estate's valuation expert, Peter Phalon (Phalon).[2] Phalon valued the lottery payments at $4,575,000.

Respondent determined that the partnership's right to receive the lottery payments had a date of death value of $8,557,850. Respondent arrived at this value using the annuity table. Respondent then valued decedent's limited partnership interest at $3,222,919, allowing discounts for the lack of a ready market, restrictions contained in the partnership agreement on transfers and admissions of new partners, and the inability of a 50-percent partner to control the partnership.

In response to respondent's determination, the estate employed a second expert, William H. Frazier (Frazier), to prepare a valuation report on the lottery payments and the partnership. Frazier valued the lottery payments at $6,053,189 and decedent's interests in the partnership at $2,067,867. Respondent employed his own valuation expert, Francis X. Burns (Burns), to value the lottery payments and the partnership.

---

[2] The parties stipulated $1,490,015, but the correct amount appears to be $1,529,749. This discrepancy does not, however, affect our decision.

Burns valued the lottery payments at \$5,762,791[3] and decedent's interests in the partnership at \$2,406,413. The experts used various methods, excluding the annuity tables, to establish the value of the lottery payments to the partnership.

The parties have stipulated that if the final judicial determination requires application of the annuity tables, then the value of the estate's interests in the partnership will be \$2,908,605. If the final judicial determination is that the application of the annuity tables is not required, then the value of the estate's interests in the partnership will be \$2,237,140.

Discussion

Section 2001 imposes a tax on the taxable estate of every decedent who is a citizen or resident of the United States. See sec. 2001; Estate of Kyle v. Commissioner, 94 T.C. 829, 838 (1990). The term "taxable estate" is defined in section 2051 as the value of the "gross estate" less applicable deductions. Sec. 2051; Estate of Kyle v. Commissioner, supra at 838. Under section 2031(a), the gross estate includes the value at the time of death of "all property, real or personal, tangible or intangible" to the extent provided in sections 2033 through 2045. Estate of Young v. Commissioner, 110 T.C. 297, 306 (1998); sec. 20.2031-1(a), Estate Tax Regs.

_____

[3] Respondent's expert valued the lottery payments without the use of the valuation tables in the event that departure from the valuation tables is warranted.

The regulations promulgated under section 2031 generally provide the methods by which property described in sections 2033 through 2045 is to be valued. Secs. 20.2031-1 through 20.2031-9, Estate Tax Regs. The valuation of any property not specifically described in sections 20.2031-2 through 20.2031-8, Estate Tax Regs., is made in accordance with the general principles set forth in section 20.2031-1, Estate Tax Regs. See sec. 20.2031-9, Estate Tax Regs. Where the property is subject to valuation using general principles, the value of property includable in the gross estate is its fair market value. Sec. 20.2031-1(b), Estate Tax Regs. A property's fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell, and both having reasonable knowledge of relevant facts. Id.

Section 2033 provides that the value of a decedent's gross estate includes the value of all property to the extent of the decedent's interest at the time of his death. Sec. 2033; Estate of Mellinger v. Commissioner, 112 T.C. 26 (1999). Decedent owned a 50-percent interest in the partnership at the time of her death, the value of which must be included in her gross estate. Sec. 2033. On the valuation date, the partnership's assets included the right to receive 19 annual lottery payments and cash. To establish the value of decedent's interests in the

partnership, the partnership's right to receive the lottery payments must be assigned a value.  Sec. 20.2031-3, Estate Tax Regs.

The sole issue for our consideration is whether the partnership's right to a fixed stream of lottery payments should be valued using the annuity tables in section 20.2031-7, Estate Tax Regs.  As an initial matter, the estate argues that the partnership's right to receive lottery payments is not an annuity.  Respondent argues that the partnership's right to receive lottery payments is an annuity which must be valued using the annuity tables.  At the time the petition was filed in this case, that question had not been addressed by this Court.  However, the question of whether lottery payments should be treated as an annuity was recently answered in Estate of Gribauskas v. Commissioner, 116 T.C. 142 (2001), a case involving substantially similar circumstances to those before us.

In Estate of Gribauskas, the decedent and his former spouse won a Connecticut Lotto prize.  Within a year after winning the lottery they divorced, and soon after, the decedent died owning the right to receive half of 18 annual, unassignable, nontransferable payments that could not be distributed in one lump sum.  The estate elected an alternate valuation date of December 3, 1994.

In Estate of Gribauskas, it was argued that the stream of lottery payments was not an annuity. We held that a decedent's right to receive lottery payments was a private annuity, includable in the gross estate under section 2033, but which should be valued pursuant to section 7520, even though the payments were unmarketable, illiquid, and nontransferable. Id.

Generally, the present value of an annuity is determined by multiplying the stream of future annuity payments by a factor. The factor incorporates an interest rate component and a mortality or term of payments component. Section 7520 provides that the value of any annuity, any interest for life or a term of years, or any remainder or reversionary interest shall be determined under the tables prescribed by the Secretary and using a rounded interest rate equal to 120 percent of the applicable Federal midterm rate for the month in which the valuation date falls. Sec. 7520(a)(1) and (2); sec. 20.7520-1(b), Estate Tax Regs. The mortality component is the life expectancy of the annuitant if the annuity is measured by a life. If the annuity is payable for a fixed term of years, the fixed term is the mortality component. The term "annuity" is not defined in section 7520; however, an annuity is commonly defined as a right to receive fixed periodic payments, either for life or for a term of years. Estate of Shapiro v. Commissioner, T.C. Memo. 1993-483. Except as provided in section 20.7520-3(b), Estate Tax

Regs. (relating to exceptions to the use of prescribed tables under certain circumstances), annuities are valued under the tables set forth in the regulations.[4] Sec. 7520. The factors for a wide range of interest rates and mortality assumptions are published in tables found in section 20.2031-7, Estate Tax Regs.

The estate argues that even if the stream of payments is an annuity, use of the annuity tables to value the payments creates an unreasonable and unrealistic result because the valuation formula in section 7520 does not take into account the lack of marketability of the lottery payments. Respondent argues for use of the annuity tables regardless of whether the right to the payments was marketable in the hands of the partnership. Respondent contends that decedent's interests in the partnership, not the partnership's right to receive the lottery payments, is the property in which the lack of marketability should be discounted. We agree with respondent.

It is well established that the tables should be used where annuities are being valued "'unless it is shown that the result is so unrealistic and unreasonable that either some modification in the prescribed method should be made * * * or complete departure from the method should be taken, and a more reasonable

---

[4] Sec. 20.7520-3(a), Estate Tax Regs., provides a list of exceptions effective May 1, 1989 (none of which are present here), and sec. 20.7520-3(b), Estate Tax Regs., enumerates additional exceptions effective after Dec. 13, 1995.

and realistic means of determining value is available.'" <u>Vernon v. Commissioner</u>, 66 T.C. 484, 489 (1976) (quoting <u>Weller v. Commissioner</u>, 38 T.C. 790, 803 (1962)); <u>Estate of Gribauskas v. Commissioner</u>, <u>supra</u> at 160. The burden of showing that the result is unreasonable rests with the party seeking to deviate from the tables. <u>Bank of Cal. v. United States</u>, 672 F.2d 758, 759 (9th Cir. 1982).

In support of departure, the estate cites <u>Estate of Shackleford v. United States</u>, 84 AFTR 2d 5902, 99-2 USTC par. 60,356 (E.D. Cal. 1999) (departure was permitted where right to receive lottery payments was illiquid). When first presented with the opportunity in <u>Estate of Gribauskas</u>, we refused, as we do here, to follow the anomalous holding in <u>Estate of Shackleford</u>. In <u>Estate of Gribauskas v. Commissioner</u>, <u>supra</u> at 163-164, we opined:

> We cannot agree with the District Court for several reasons. First, * * * case law offers no support for considering marketability in valuing annuities. * * *
>
> Second, the enactment of a statutory mandate in section 7520 reflects a strong policy in favor of standardized actuarial valuation of these interests which would be largely vitiated by the estate's advocated approach. A necessity to probe in each instance the nuances of a payee's contractual rights, when those rights neither alter or jeopardize the essential entitlement to a stream of fixed payments, would unjustifiably weaken the law.
>
> Third, as a practical matter, we observe that an annuity, the value of which consists solely in a promised stream of fixed payments, is distinct in nature from those interests to which a marketability

discount is typically applied.  * * * The value of an annuity * * * exists solely in the anticipated payments, and inability to prematurely liquidate those installments does not lessen the value of an enforceable right to $X annually for X number of years.

As we concluded in Estate of Gribauskas v. Commissioner, 116 T.C. at 161, 163, when the asset to be valued is one for which the tables are generally employed, mere illiquidity and/or lack of marketability of the asset does not lead to, or create, an unreasonable result requiring an alternative valuation method.

In Estate of Gribauskas we found that a fixed stream of lottery payments, subject to minimal risk of default, was a private annuity.  Tabular valuation did not lead to an unrealistic and unreasonable result merely because the annuity, lacking a corpus from which to draw upon, was unmarketable.  The estate now asserts arguments similar to those of the taxpayer in Estate of Gribauskas; however, the estate has not shown any significant fact that would distinguish Estate of Gribauskas. Moreover, in Estate of Gribauskas, after a review of the cases where departure was permitted, we opined that "those [cases] permitting departure have almost invariably * * * [with the exception of Estate of Shackleford v. United States, supra,] required a factual showing that renders unrealistic and unreasonable the return or mortality assumptions underlying the tables."  Id. at 161 (and the cases cited thereat).

Here, the 19 annual payments were backed by investments in U.S. Government bonds, virtually eliminating the risk of default. As for the assumptions regarding mortality, both parties agree that the payments were set to end on a date certain. Therefore, use of the tables in this case could hardly create an unreasonable or unrealistic result.

In this case, three experts used varying valuation methods based on a willing-buyer willing-seller approach. All of them employed a discount for the inherent lack of marketability of the lottery payments, none of them used the valuation tables prescribed by the regulations,[5] and none of the valuations were alike. The estate suggests that the mere fact that there were differences among the amounts of the valuations warrants a departure from the tables.[6] However, the three valuations with various methodologies in this case make a compelling argument justifying the use of valuation tables. In the words of the Court of Appeals for the Ninth Circuit: "actuarial tables provide a needed degree of certainty and administrative convenience in ascertaining property values and prove accurate

---

[5] Respondent offered this expert valuation only in the alternative--in the event the Court were to reject respondent's primary argument that the valuation tables control. See supra note 3.

[6] If the valuation tables are used, the net value of the lottery payments was $8,557,850. The estate's two experts valued the lottery payments at $4,575,000 and $6,053,189, and respondent's expert found a value of $5,762,791.

when applied in large numbers of cases, although discrepancies inevitably arise in individual cases." Bank of Cal. v. United States, supra at 760. Moreover, the experts did not provide an opinion as to the application of the tables with regard to annuities but merely valued the partnership as though the lottery payments' lack of marketability, or other circumstances, warranted a departure from the tables. As noted above, we have already addressed the issue of whether the lack of marketability inherent in the lottery payments would warrant departure.

The facts here are substantially similar to those in Estate of Gribauskas v. Commissioner, 116 T.C. 142 (2001). The only significant factual difference is that here a partnership, rather than an individual, owned the right to receive the lottery payments. Here, decedent won the lottery and shared the prize with Newby. The lottery payments could not be assigned or transferred without a court order, they could not be distributed in one lump sum, and they were funded through investments in U.S. Government bonds. Additionally, the valuation dates are similar with regard to the applicable statutes, regulations, and caselaw.

In the context of resolving the narrow dispute as framed by the parties concerning the value of the partnership's right to the lottery payments, there is no difference between a right to receive lottery payments that is owned by a partnership in which decedent owned an interest and an identical right to receive

lottery payments that was owned directly by decedent.  In both instances, the asset must be given a value in order to determine the tax consequences to the estate.  Sec. 20.2031-3, Estate Tax Regs.  The rate of return and the risk of return are the same, and the term of years during which the payments are made ends on a date certain.  To depart from tabular valuation in this case simply because the annuity was owned by a partnership would be contrary to our decision in Estate of Gribauskas v. Commissioner, supra, as the facts here are otherwise indistinguishable.

For the foregoing reasons, we hold that the fair market value of the partnership's right to receive future lottery payments should be determined in accord with the actuarial tables in section 20.2031-7, Estate Tax Regs.  We have considered all other arguments advanced by the parties, and to the extent that we have not addressed these arguments, we consider them irrelevant, moot, or without merit.

To reflect the foregoing and concessions of the parties,

Decision will be entered

under Rule 155.