**Alma M. O'REILLY, Petitioner–Appellee,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellant.**

**Charles H. O'REILLY, Sr., Petitioner–Appellee,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellant.**

Nos. 91–2004, 91–2009.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 13, 1992.

Decided Sept. 1, 1992.

Jonathan S. Cohen, Dept. of Justice, Washington, D.C., argued (Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen and Teresa T. Milton, Dept. of Justice, on brief), for respondent-appellant.

James F. McLeod, Springfield, Mo., argued (Vincent Tyndall, on brief), for petitioner-appellee.

Before LOKEN, Circuit Judge, BRIGHT, Senior Circuit Judge, and HANSEN, Circuit Judge.

LOKEN, Circuit Judge.

The Commissioner of Internal Revenue appeals the Tax Court's decision that Charles and Alma O'Reilly owe no additional gift tax for the 1985 and 1986 tax years. The issue turns on the valuation of the O'Reillys' gifts of O'Reilly Automotive, Inc., stock in trust to their children. The Commissioner objected to the O'Reillys' use of a gift tax actuarial table to value their retained right to dividend income from the stock. The Tax Court upheld the taxpayers' use of the table. We reverse and remand.

I.

In May 1985, Charles and Alma each donated twenty shares of O'Reilly Automotive to five grantor retained income trusts, or GRITS as they are called by tax planners. Charles and Alma retained the right to all income during the two-to-four-year life of each trust, with the stock passing to their children at expiration. O'Reilly Automotive stock was then worth $9,639 per share. The O'Reillys' basis was $115 per share. In the three years prior to 1985, O'Reilly Automotive had paid dividends of $13 per share, a yield of 0.2%.[1] To avoid paying substantial capital gains taxes, the trustee was authorized to hold the shares in each trust, free of any duty to seek greater income by diversifying.

Despite O'Reilly Automotive's history of paltry dividends, the O'Reillys valued their short-term retained income interests for gift tax purposes at twenty-five to thirty percent of the total value of the stock by using the gift tax actuarial table appearing in Treas.Reg. § 20.2512–5(f), Table B, which is based upon an assumed ten percent annual rate of return. The Commissioner determined that use of the actuarial table was inappropriate and assessed gift tax deficiencies for the years 1985 and 1986 based upon the full value of the stock at the dates of gift, $9,639 per share. The O'Reillys filed timely petitions with the Tax Court contesting the deficiencies.

In the Tax Court, the Commissioner argued that the gift tax applies to the entire value of the stock because the O'Reillys' retained income interest "is not susceptible of measurement on the basis of generally accepted valuation principles." Treas.Reg. § 25.2511–1(e). The O'Reillys argued that Treas.Reg. § 25.2512–5 requires the use of Table B to value both their retained income interests and the remainder interests gifted to their children.

---

**1.** During the lives of the trusts, the company paid dividends of $13–$18 per share, disregarding a stock split that does not affect the question before us. During this period, O'Reilly Automotive was owned entirely by members of the O'Reilly family. Charles and Alma owned relatively few shares. The record does not reflect who effectively controlled the company's dividend decisions.

The Tax Court ruled that the O'Reillys had properly used Table B. The Court acknowledged that taxpayers did not want the trustee to sell the stock, and that in the years prior to the gifts the stock had produced far less income than the ten percent return incorporated into Table B. However, the Court rejected the Commissioner's reliance on § 25.2511–1(e) because it "is directed toward situations where the gifts are subject to conditions which are not susceptible of valuation, such as death without issue, and not to situations where the gifts are unconditional but the underlying facts may cause the gift to be difficult to value." *O'Reilly v. Commissioner*, 95 T.C. 646, 650–51 (1990). The Court also distinguished four cases relied upon by the Commissioner[2] because they involved gift tax exclusion issues under I.R.C. § 2503(b).

The Tax Court observed that, if the O'Reillys had given their children the income interests, rather than the remainders, the Commissioner's argument would result in no taxable gift, a result inconsistent with Treas.Reg. § 25.2512–5(d) and Rev.Rul. 79–280, 1979–2 C.B. 340. "In this context," concluded the Court, "the transfers should be treated as what they really were, namely, gifts of future interests in an amount equal to the discounted fair market value of the stock, determined under Table B, in accordance with the mandate of section 25.2512–5(d)." *Id.* at 654. This approach "will facilitate the valuation of gifts," "produces a realistic result and takes into account 'the interest of a simplified overall administration of the tax laws.'" *Id.* at 655, *quoting McMurtry v. Commissioner*, 203 F.2d 659, 666 (1st Cir.1953).

On appeal, the Commissioner argues that Treas.Reg. § 25.2511–1(e) should apply. Applying the rule of *Robinette v. Helvering*, 318 U.S. 184, 63 S.Ct. 540, 87 L.Ed. 700 (1943), the Commissioner claims that the O'Reillys' retained income interests cannot be valued under generally accepted valuation principles because the trusts held non-income-producing stock in a closely held

family business and the trustee never intended to sell the stock and reinvest in property that would produce increased income. In any event, the Commissioner argues, taxpayers have the burden of establishing the value of their gifts, and actuarial Table B may not be used in this case because it produces a "patently unreasonable result."

## II.

The gift tax applies to transfers of property in trust. I.R.C. § 2511(a). When the settlor of a trust retains a present or future interest in the property transferred to the trust, Treas.Reg. § 25.2511–1(e) provides:

> § 25.2511–1(e). If a donor transfers by gift less than his entire interest in property, the gift tax is applicable to the interest transferred.... However, if the donor's retained interest is not susceptible of measurement on the basis of generally accepted valuation principles, the gift tax is applicable to the entire value of the property subject to the gift.

The gift tax statute provides generally that gifts of property are taxed on the basis of the property's fair market value at the date of the gift. I.R.C. § 2512(a). *See Commissioner v. Powers*, 115 F.2d 209 (1st Cir.1940), *aff'd*, 312 U.S. 259, 61 S.Ct. 509, 85 L.Ed. 817 (1941); *Heyen v. United States*, 945 F.2d 359, 364 (10th Cir.1991). The subject is covered in greater detail in Treas.Reg. § 25.2512. The following portions of that regulation are critical in this case:

**The General Principle.**

> § 25.2512–1. ... The value of the property is the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell, and both having reasonable knowledge of relevant facts.... All relevant facts and elements of value as of the time of

---

**2.** *Stark v. United States*, 345 F.Supp. 1263 (W.D.Mo.1972), *aff'd*, 477 F.2d 131 (8th Cir. 1973); *Calder v. Commissioner*, 85 T.C. 713 (1985); *Berzon v. Commissioner*, 63 T.C. 601

(1975), *aff'd*, 534 F.2d 528 (2d Cir.1976); *Rosen v. Commissioner*, 48 T.C. 834 (1967), *rev'd*, 397 F.2d 245 (4th Cir.1968).

the gift shall be considered.... See ... §§ 25.2512–4 through 25.2512–6 for further information concerning the valuation of other particular kinds of property.

**The Relevant Specific Applications.**

§ 25.2512–5(a)(1)(i). ... [T]he fair market value of annuities, life estates, terms for years, remainders, and reversions transferred after November 30, 1983, is their present value determined under this section.... Where the donor transfers property in trust or otherwise and retains an interest therein, the value of the gift is the value of the property transferred less the value of the donor's retained interest.

§ 25.2512–5(c). ... If the interest to be valued is the right to receive income of property or to use non-income-producing property for a term of years, column 3 of Table B is used.

§ 25.2512–5(d). ... If the remainder or reversion is to take effect at the end of a term for years, column 4 of Table B should be used.

The Table B referred to is the actuarial table used by the O'Reillys. It is found at subsection 25.2512–5(f). The O'Reillys used Column 3 of Table B to determine the portion of the stock's total value attributable to their retained income interests. Column 4 shows the reciprocal portion attributable to the remainder interests gifted to their children.

### A.

■ We agree with the Tax Court that the O'Reillys' retained income interests were "susceptible of measurement on the basis of generally accepted valuation principles" within the meaning of Treas.Reg. § 25.2511–1(e). The parties stipulated to the total per share value of the stock. The company had a history of paying small but steady dividends in the years prior to the gifts. As Table B illustrates, the value of a term-of-years income interest can be actuarially determined using any assumed rate of return. Thus, on this record, we have little doubt that a valuation expert using "generally accepted valuation principles" could place a value on the retained income interests in question.[3] That value would no doubt be dramatically different than the value produced by use of Table B, but it would not be zero. In other words, the problem here is not that the value of the interests cannot be measured. It is that Table B produces a wildly unrealistic measurement.

■ A review of prior cases confirms that the last sentence in Section 25.2511–1(e) applies only to property interests subject to contingencies that are indeterminable and that make it more likely than not that the interests will have no value. For example, in *Robinette v. Helvering*, the taxpayer sought to deduct the value of a reversionary interest that would have value only if the grantor's thirty-year-old daughter had no child who reached the age of 21 *and* if neither life tenant distributed the remainder of the property by will. The Court concluded that "the actuarial art could do no more than guess at the value" of this negligible interest. 318 U.S. at 189. Likewise, in the gift tax exclusion cases cited in footnote 2, the taxpayer failed to introduce evidence that *any* income would be received by the trust beneficiaries. When property yields no present income, the taxpayer is sensibly prohibited from using the tables to "create an income value from assets that have never shown any capacity to produce income for the trust." *Maryland Nat. Bank v. United States*, 609 F.2d 1078, 1081 (4th Cir.1979). This distinction is illustrated by *Rosen v. Commissioner*, 397 F.2d 245, 247 (4th Cir.1968),

**3.** We express no opinion as to whether this would be true in a case where the settlor of the trust controls the dividends paid on stock subject to a retained income interest. Judge Frank suggested that no objective valuation technique can account for the donor's whim in such a situation. *See Commissioner v. Marshall*, 125 F.2d 943, 946–47 (2d Cir.1942). On the other hand, the facts in a particular case might permit the valuation expert to disregard the whim factor. *See Greer v. United States*, 448 F.2d 937 (4th Cir.1971). *Compare Security Pacific Nat. Bank v. United States*, 578 F.2d 790 (9th Cir. 1978); *Holbrook v. United States*, 575 F.2d 1288 (9th Cir.1978).

where the Fourth Circuit and the Tax Court disagreed over whether the donated income interests had any value.

Here, on the other hand, the parties agree that O'Reilly Automotive consistently paid dividends for a number of years prior to 1985. Thus, the retained income interests were not worthless, and their value is susceptible of measurement. The only valuation variable is whether, at the time the trusts were created, the company could be expected to continue to pay dividends at the prior years' levels, a variable that stock valuation experts routinely predict. Therefore, we agree with the Tax Court that it would violate the statute and the regulations to value those interests at zero under § 25.2511–1(e).

### B.

A thornier question is whether the Tax Court was correct in concluding that the O'Reillys' retained income interests *must* be valued by use of actuarial Table B. The plain language of § 2512–5 provides support for that conclusion: "the fair market value of ... terms for years ... is their present value *determined under this section*" (emphasis added). However, the Tax Court did not rely upon this language, and rightly so. The dominant regulation is § 2512–1, which provides that value "is the price at which such property would change hands between a willing buyer and a willing seller." After stating that governing principle, § 2512–1 refers us to § 2512–5 "for further information concerning the valuation of other particular kinds of property." That phrasing does not suggest that the methodologies in the latter regulation should apply even when they violate the overriding principle in the former. As this court held in *Hamm v. Commissioner*, 325 F.2d 934, 938 (8th Cir.1963), *cert. denied*, 377 U.S. 993, 84 S.Ct. 1920, 12 L.Ed.2d 1046 (1964), the valuation of property interests for tax purposes "is ever one of fact and not of formula." Thus, we must look at more than the language of the regulation to resolve this question.

Two considerations persuade us that the tables in § 25.2512–5(f) were not intended to apply regardless of the "relevant facts and elements of value," to use the language of § 2512–1. First, the statute prescribes generally that the amount of a gift is the fair market value of property on the date of the gift. As stated in *Hanley v. United States*, 63 F.Supp. 73, 81, 105 Ct.Cl. 638 (1945):

It is only those Regulations of the Treasury Department which are reasonably adapted to the enforcement of an Act of Congress that have the force and effect of law. A regulation that produces a result different from that intended by Congress has no validity.

*See also United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 24–26, 102 S.Ct. 821, 827–28, 70 L.Ed.2d 792 (1982). Therefore, an interpretation of § 2512–5 that causes its tables to apply in situations where they do not produce a value that reasonably approximates the fair market value of the gift might well invalidate the regulation. Obviously, as the Commissioner appears to recognize in this case, we should avoid such an interpretation.

Second, for two generations courts have refused to apply the actuarial tables as universally as the Tax Court applied them here. *See, e.g., Korn v. Commissioner*, 35 B.T.A. 1071 (1937) (emphasizing that actuarial tables must be interpreted in light of fair market value). The Tax Court has long followed the rule that use of the tables "must be sustained unless it is shown that the result is so unrealistic and unreasonable that either some modification in the prescribed method should be made, or complete departure from the method should be taken, and a more reasonable and realistic means of determining value is available." *Weller v. Commissioner*, 38 T.C. 790, 803 (1962) (citations omitted). Applying this rule, the courts have departed from use of the tables in a significant number of cases.

For example, in *Huntington Nat. Bank v. Commissioner*, 13 T.C. 760, 772 (1949), the Tax Court refused to use the mortality table because the elderly widow's health was poor, and it reduced the four percent rate of return then prescribed in Table A to three-and-one-half percent based upon the

actual annual rate of return of the gifted securities at the time of transfer. In *Hanley*, the court used a three percent rate of return to value a life estate even though the pertinent regulation stated that "[a]ll other future payments are to be discounted upon the basis of compound interest at a rate of 4 percent a year." 63 F.Supp. at 80–82. And in *Green v. Commissioner*, 22 T.C. 728, 732–33 (1954), after stating that the tables with their four percent assumed rate of return should be used "unless the facts present a substantial reason for departure," the Court held that proving an actual yield of 4.34% was not a sufficient reason to depart but that proving a yield of ten percent would have been. *See also Bowden v. Commissioner*, 234 F.2d 937, 942 (5th Cir.), *cert. denied*, 352 U.S. 916, 77 S.Ct. 215, 1 L.Ed.2d 123 (1956) (interpreting the predecessor of § 25.2512–5 to allow for the possibility that actuarial tables may be shown to be incorrect); *Vernon v. Commissioner*, 66 T.C. 484, 489 (1976) (same); *Jennings v. Commissioner*, 10 T.C. 323, 327–28 (1948); *Denbigh v. Commissioner*, 7 T.C. 387, 389 (1946); Rev.Rul. 77–195, 1977–1 C.B. 295.

■■■ Although we sympathize with the Tax Court's search for a simple, predictable rule, we find its attempt to distinguish the *Weller* line of cases unpersuasive. More importantly, we conclude that in abandoning the *Weller* principle the Tax Court uprooted § 25.2512–5 and its tables from their statutory foundation—to determine the fair market value of the property on the date of the gift. We agree with the court in *Green* that the tables should apply unless the facts present a substantial reason for departure. But whenever use of the tables would produce a substantially unrealistic and unreasonable result, and a more reasonable and realistic means of determining value is available, the statute requires, and decades of case law confirm, that the tables may not be used by either the Commissioner or the taxpayer.

## C.

■■■ Having concluded that the taxpayers, the Commissioner, and the Tax Court all applied the wrong legal standard, we face the knotty question of how to resolve this case. The Commissioner argues that the O'Reillys have the burden of proof, their method failed to meet it, so they lose. That would normally be true. *See Krabbenhoft v. Commissioner*, 939 F.2d 529, 533 (8th Cir.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 967, 117 L.Ed.2d 133 (1992); *Hamm*, 325 F.2d at 937. But the issue is not so simple. The taxpayers used tables that the regulations encouraged them to use and that were presumptively correct under the *Weller* standard. Therefore, we conclude the Commissioner bore the considerable burden of proving that the tables produce such an unrealistic and unreasonable result that they should not be used.

We also conclude, however, that the Commissioner met that burden. Using Table B, the O'Reillys valued their retained income interests at $100,821. The total dividends paid on the stock during the terms of the five trusts was $1,800, somewhat more than would have been estimated using the dividend return in the years immediately preceding the gifts. Given the Tax Court's finding that the trustee had no intent to sell the stock, it is obvious that $100,000 is not anywhere close to "the price at which [the retained income interests] would change hands between a willing buyer and a willing seller," the overriding standard in Treas.Reg. § 2512–1. Therefore, the gifts of the reciprocal remainder interests were unrealistically and unreasonably undervalued when the O'Reillys subtracted the Table B value of their income interests from the total fair market value of the stock.

■■■ On the other hand, as we explained in Part II.A., the value the Commissioner urged for the retained income interests—zero—was also unrealistic and unreasonable. As Judge Learned Hand observed in *Commissioner v. Maresi*, 156 F.2d 929, 931 (2d Cir.1946):

> We are dealing with speculation as to the future on a subject that best admits of no accurate determination ... The one sure way to do injustice in such cases is to allow nothing whatever upon the ex-

cuse that we cannot tell how much to allow.

When the evidence shows the Commissioner's determination is invalid, his presumption of correctness falls away, and the Tax Court must make the proper determination in light of the evidence, with no presumption in favor of the Commissioner. "If the taxpayer has demonstrated that the deficiency determination is erroneous, the taxpayer is not required to establish the correct amount of tax." *Commissioner v. Riss*, 374 F.2d 161, 166 (8th Cir.1967). *See Campbell County State Bank, Inc. v. Commissioner*, 311 F.2d 374, 379 (8th Cir. 1963); *Hipp v. United States*, 215 F.Supp. 222, 226 (W.D.S.C.1962). That is the court's function. Therefore, the case must be remanded to the Tax Court for redetermination of the value of the gifts.

To summarize, we hold that the Tax Court erred in refusing to apply the *Weller* principle to this case. When use of the tables produces a substantially unrealistic and unreasonable result *and* when a more reasonable and realistic valuation technique is available, faith that the tables will "average out" in the long run will not suffice. Compliance with the statute and fairness in the particular case require that the reviewing court use that alternative method to determine the fair market value of the gifted property. This is such a case. Use of the tables produces a totally unreasonable result and the income and remainder interests in O'Reilly Automotive stock are capable of more accurate valuation.

Accordingly, the decision of the Tax Court is reversed and the case is remanded for further proceedings consistent with this opinion.