**ESTATE OF Paul C. GRIBAUSKAS, Deceased, Roy L. Gribauskas, Co-Executor, Carol Beauparlant, Co-Executor Petitioners—Appellants.**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent—Appellee.**

**Docket No. 01–4189.**

United States Court of Appeals, Second Circuit.

Argued: April 28, 2003.

Decided: Aug. 26, 2003.

---

Mark R. Kravitz, Wiggin & Dana, New Haven, CT, for the Petitioners—Appellants.

Jonathon S. Cohen, Department of Justice, Tax Division, Washington DC, for Resondent—Appellee.

Before: VAN GRAAFEILAND, MINER, and POOLER, Circuit Judges.

VAN GRAAFEILAND, Senior Circuit Judge.

This appeal concerns the valuation, for estate tax purposes, of a decedent's Connecticut Lotto prize. The Tax Court (Nims, J.) held that the prize must be valued pursuant to the actuarial tables prescribed under Internal Revenue Code § 7520. For the reasons that follow, we reverse and remand.

The decedent, Paul Gribauskas, and his wife won a $15,807,306.60 Connecticut Lotto prize in late 1992, to be paid out in twenty annual installments of $790,365.34. Following disbursement of the first installment, Gribauskas and his wife divorced. Thereafter, each was entitled to receive $395,182.67 annually. Gribauskas died intestate on June 4, 1994, with 18 installments remaining to be paid.

Decedent's estate filed an Estate Tax Return Form 706 on September 11, 1995. The value of the remaining prize installments was discounted on the return to account for restrictions imposed on Lotto winnings by the State of Connecticut. Pursuant to those restrictions, all prizes in excess of $1 million were payable in twenty equal annual payments which could not be accelerated under any circumstances. More significantly, winners were forbidden from assigning or transferring their right to future installments to third parties. As one would expect, these prohibitions severely restricted the ability of winners to exchange contractually their rights to future payments for an up-front lump sum. Nevertheless, as the parties in this case have stipulated, a market for such unassignable winnings did exist, albeit at a significant discount, at the time that the estate filed its return. Decedent's estate, after factoring in this risk-based market discount, valued the Lotto prize at $2,603,661.02 on its return.

The Commissioner thereafter determined that the prize, properly characterized, constituted an annuity, and therefore should have been valued pursuant to the

actuarial tables set forth under I.R.C. § 7520. Consulting these tables, the Commissioner determined that the present value of the award was, in fact, $3,528,058.22. The estate correspondingly was assessed a $403,167.00 tax deficiency.

On February 18, 1998, the estate filed a petition in the Tax Court seeking redetermination of the deficiency. In support of its petition, the estate argued that the § 7520 tables should not govern valuation in this case because they yielded an "unrealistic and unreasonable" result in that they did not accurately account for loss of value due to marketability restrictions.[1] Notably, the parties stipulated that a market for the Lotto winnings did exist at the time the return was filed, that the prize's market value was diminished considerably due to transfer restrictions, and that, if departure from the § 7520 tables was warranted, the estate's valuation of the prize was correct. JA 44–47, 58.

The Tax Court held, as a matter of law, that marketability restrictions, per se, did not justify departure from tabular valuation. *See Estate of Gribauskas v. Comm'r*, 116 T.C. 142, 165, 2001 WL 227025 (2001). In particular, the court concluded that prior case law did not support deviating from the actuarial tables on the basis of marketability restrictions alone, and that deviation in this case would undermine the policy favoring standardized actuarial valuation of annuities. *Id.* at 160–64. We believe that the desire for standardization is not so demanding.

An estate tax is imposed on the value of the taxable estate (defined as the value of the gross estate minus applicable deductions) of every deceased United States citizen or resident. 26 U.S.C.

§§ 2001 and 2051. The value of the gross estate, in turn, includes the fair market value of all the decedent's property. *See* 26 U.S.C. § 2031; 26 C.F.R § 20.2031–1(b). "The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts.... All relevant facts and elements of value as of the applicable valuation date shall be considered in every case." 26 C.F.R. § 20.2031–1(b). Generally, the value of an annuity, or of any interest for a term of years, is derived from application of standardized valuation tables. *See* 26 U.S.C. § 7520(a). However, departure from the valuation tables is appropriate when adherence to them "would produce an obviously erroneous result", *Berzon v. Comm'r*, 534 F.2d 528, 532 (2d Cir.1976), or would "produce a substantially unrealistic and unreasonable result." *O'Reilly v. Comm'r*, 973 F.2d 1403, 1408 (8th Cir.1992). A party challenging application of the tables "bears the 'considerable burden of proving that the tables produce such an unrealistic and unreasonable result that they should not be used.'" *Shackleford v. U.S.*, 262 F.3d 1028, 1032 (9th Cir.2001) (quoting *O'Reilly*, 973 F.2d at 1408).

*Shackleford, supra*, serves as a useful guidepost for deciding the case at hand. In that case, the Ninth Circuit Court of Appeals ruled on an issue virtually identical to that which we now face. The court held that, because the standardized valuation tables did not reasonably approximate the fair market value of a California lottery prize that was subject to anti-assignment restrictions, departure from the ta-

---

1. The estate preliminarily argued that the installment payments could not properly be characterized as an annuity, and, for that reason alone, could not be valued under the

§ 7520 tables. The Tax Court held that the prize constituted an annuity, and the estate does not challenge that ruling on appeal.

bles was appropriate where the taxpayer provided a more realistic and reasonable valuation method. *Id.* at 1033. In arriving at its holding, the court correctly observed that the "right to transfer is 'one of the most essential sticks in the bundle of rights that are commonly characterized as property'", and that an asset subject to marketability restrictions is, as a rule, worth less than an identical item that is not so burdened. *Id.* at 1032 (citations omitted).

■ As stated previously, the parties in the case before us have stipulated that the transferability restrictions on the prize had an adverse impact on its market value. Moreover, the Commissioner agrees that the estate's valuation of the winnings, a figure over $900,000 below that prescribed by the § 7520 standardized valuation tables, accurately reflects the market discount attributable to those restrictions. Under these circumstances, application of the tables would clearly "produce a substantially unrealistic and unreasonable result", *O'Reilly,* 973 F.2d at 1408. We hold, therefore, that valuing the winnings pursuant to the tables was erroneous.

The Tax Court held that adherence to the tables was proper because no prior case, other than the opinion of the *Shackleford* district court[2] (which it dismissed as "anomalous"), has held that marketability restrictions alone can justify departure. *See Gribauskas,* 116 T.C. at 163. In its brief before this Court, the Commissioner argues for a similarly narrow interpretation of the precedent. The Commissioner contends that despite the broad language in departure cases such as *O'Reilly,* departures from the tables are appropriate only when the proponent of departure can show a substantial inconsistency between the ac-

tual facts and the assumptions underlying the tables, e.g., when the rate of return is actually lower than the assumed rate of return in the tables, or when the death of the measuring life is imminent due to terminal illness. *See Berzon,* 534 F.2d at 532 (departure appropriate when one could predict with assurance that the income from an investment would be zero, and that therefore, use of the actuarial tables with a presumed yield of 3.5% led to "an obviously erroneous result"); *O'Reilly,* 973 F.2d at 1406 (departure appropriate when very low dividends historically paid, and therefore, the actuarial tables, assuming a much higher yield, "produce[d] a wildly unrealistic measurement"); *see also Froh v. Commissioner,* 100 T.C. 1, 5, 1993 WL 1869 (1993) (use of tables would be "unrealistic and unreasonable" in valuing an income stream, when the projected income stream is expected to be exhausted prior to the expiration of the income term being valued); *Estate of Jennings v. Commissioner,* 10 T.C. 323, 327, 1948 WL 147 (1948) (departure from mortality tables appropriate when reasonable life expectancy of decedent's husband (the measuring life) was not longer than a year from decedent's death).

The Commissioner is correct in characterizing the case law up to this point—excluding, of course, *Shackleford*—as authorizing departures only when the actual facts are inconsistent with the assumptions underlying the tables. The Commissioner suggests that departures should be limited to the fact patterns of the prior cases. Although it is possible to make a distinction between cases involving inconsistencies between the tables' assumptions and the ultimate facts and cases identifying only an error in the ultimate result of the

---

**2.** The Ninth Circuit affirmed the district court opinion in *Shackleford* after the Tax Court issued its opinion in the case at hand.

tables' valuation, such a distinction is unadvisable. The reasoning behind the departures in the earlier cases is completely applicable to errors in the ultimate valuation, like those in the case at hand. The governing principle is that a departure is allowed if the tables produces a substantially unrealistic and unreasonable result.

Furthermore, the need for efficiency and consistency does not justify the application of the standardized tables in the instant case. The law sufficiently accounts for such policy concerns by placing the burden on the party challenging the application of the tables to prove that the tables yield a substantially unreasonable or unrealistic result. *See Shackleford,* 262 F.3d at 1032. This high burden has been met by the decedent's estate in the instant case by virtue of the stipulations in the record.

We reverse and remand to the Tax Court for further proceedings consistent with this opinion.