W. EUGENE DAVIS, Circuit Judge,
dissenting:
For the reasons that follow, I agree with the well-reasoned opinions of the Second and Ninth Circuits and would not create a circuit split on the narrow issue presented in this appeal.
The broad legal principles that control this case are agreed upon. We start from the bedrock premise that property included in a decedent’s gross estate is valued at its fair market value; that is, the price at which the property would change hands between a willing buyer and a willing seller. However, 26 U.S.C. § 7520 and related regulations provide, as a general proposition, that the value of a private annuity is determined from a table. This table value is determined by applying a factor composed of an interest rate component and a mortality component. All parties agree, however, that the applicability of the actuarial tables to determine value of a private annuity is subject to an important jurisprudential exception: either the taxpayer or the Commissioner can avoid use of the table value by showing that “... the result *858 is so unrealistic and unreasonable that either some modification in the prescribed method should be made, or complete departure from the method should be taken, and a more reasonable and realistic means of determining value is available.” O’Reilly v. Commissioner, 973 F.2d 1403 (8th Cir.1992)(quoting Weller v. Commissioner, 38 T.C. 790, 803, 1962 WL 1155 (1962)). The scope of the exception to the use of the table generated value is the narrow issue presented to us in this appeal.
The Weller/O’Reilly test contemplates a comparison between the annuity’s value from the table with its value arrived at by an alternate method based on the particular features of the annuity in question. The O’Reilly court explained that application of the tables in situations where they do not produce a value that reasonably approximates the fair market value of the gift might well invalidate the regulation. The court concluded:
More importantly, we conclude that in abandoning the Weller principle [and applying the tables in situations where the table does not produce the value that reasonably approximates the fair market value of the gift] the Tax Court uprooted § 25.2512-5 and its tables from their statutory foundation — to determine the fair market value of the property on the date of the gift. We agree with the court in Green that the tables should apply unless the facts present a substantial reason for departure. But whenever use of the tables would produce a substantially unrealistic and unreasonable result, and a more reasonable and realistic means of determining value is available, the statute requires, and decades of case law confirm, that the tables may not be used by either the Commissioner or the taxpayer.
Id. 973 F.2d at 1408.
This brings us to the point of my disagreement with the majority. The majority reasons that only the factors considered by the table — interest rate and mortality— can be used to establish that the table value is unreasonable. More to the point, the majority agreed with the Commissioner that the annuity’s non-marketability can not be considered. I disagree.
The broad language of O’Reilly suggests that any fact related to the specific annuity in question that is relevant to its market value can be considered in deciding whether the table value is unjustified and unreasonable. The court stated that “[t]he dominant regulation is § 2512-1, which provides that value ‘is the price at which such property would change hands between a willing buyer and a willing seller.’ ” Id. at 1407 (quoting Treas.Reg. § 25-2512-1). The court then concluded by emphasizing that the “valuation of property interests for tax purposes is ‘ever one of fact and not of formula.’ Thus we must look at more than the language of the regulation to resolve this question.” Id. (quoting Hamm v. Commissioner, 325 F.2d 934, 938 (8th Cir.1963), cert. denied, 377 U.S. 993, 84 S.Ct. 1920, 12 L.Ed.2d 1046 (1964)).
The majority declines to follow the circuit courts which have written on the precise question presented here: whether statutory anti-assignment restrictions on lottery payments justify departure from the annuity tables when determining the asset’s value. See Shackleford v. U.S., 262 F.3d 1028 (9th Cir.2001), and Gribauskas v. Commissioner, 342 F.3d 85 (2d Cir.2003). Both cases are indistinguishable from the case at hand.
In Shackleford, the winner of the lottery prize died after collecting three of twenty $508,000 annual payments. California law, like Texas law, prohibited assignment of lottery payments. The question was whether the trial court erred in considering the annuity’s non-marketability in de *859 parting from the annuity tables. The court laid out the governing rules as follows:
Non-commercial annuities, such as the lottery payments at issue, are valued pursuant to tables promulgated by the Secretary of the Treasury except when another regulatory provision applies. 26 U.S.C. § 7520.
... although the general rule requires that the tables be used because they provide both certainty and convenience when applied in large numbers of cases ... exceptions have been made when the tables do not reasonably approximate the fair market value of the asset.
262 F.3d at 1031-1032 (citations omitted).
The court then explained why it accepted the district court’s conclusion that the discount tables did not reasonably approximate the fair market value of the lottery payments because of California’s statutory anti-assignment restriction:
Indeed, the reality of a decedent’s economic interest in any particular property right is a major factor in determining valuation for estate tax purposes. Each of the characteristics of a property interest must be considered in determining its value for taxing purposes. The right to transfer is “one of the most essential sticks in the bundle of rights that are commonly characterized as property.” It is axiomatic that if an asset’s marketability is restricted, it is less valuable than an identical marketable asset. We have long recognized that restrictions on alienability reduce value.
Id. at 1032 (citations omitted).
In Gribauskas, the Second Circuit considered whether the Tax Court committed error in applying the actuarial tables and in refusing to consider the non-marketability of the lottery prize. The Second Circuit, speaking through Judge Van Graafeiland, concluded that the Tax Court erred as a matter of law in concluding that marketability restrictions did not justify departure from the tables. The Court reasoned that in determining fair market value “[a]ll relevant facts and elements of value as of the applicable valuation date shall be considered in every case. 26 C.F.R. § 20.2031-l(b).” 342 F.3d at 87. The Commissioner argued, as he does in this case, that “despite the broad language in departure cases such as O’Reilly, departures from the tables are appropriate only when the proponent of departure can show a substantial inconsistency between the actual facts and the assumptions underlying the tables, e.g. when the rate of return is actually lower than the assumed rate of return in the tables, or when the death of the measuring life is eminent due to terminal illness.” Id. at 88. The court rejected that argument and concluded that “[t]he governing principle is that a departure is allowed if the table produces a substantially unrealistic and unreasonable result.” Id. at 89.
I would follow the well-reasoned decisions of the 2nd and 9th Circuits’ holding that in arriving at an alternate fair market value to compare with the table value a court can consider non-marketability or any other legitimate factor that affects the fair market value of the annuity. Those courts properly, I think, focused on comparing the results of two computations: the annuity’s value under the table and its value under any alternate method designed to show fair market value.
The lottery annuity in this case is non-marketable by statute. Even the Commissioner’s expert asserts that its market value is reduced by over two million dollars because of its non-marketability. In computing an alternate value to compare to the table value, the better rule, as recognized by the 2nd and 9th Circuits, is to consider any factor that affects the annuity’s fair market value, including its non- *860 marketability. Otherwise, other factors that affect fair market value just as much as interest rate and mortality must be arbitrarily disregarded. For example, under the Commissioner’s theory, the near insolvency of the obligor on the annuity could not be considered in arriving at its value. For these reasons, I respectfully dissent.