*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 09a0028p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CAROL J. NEGRON, Executrix for the Estates
of Mary A. Susteric and Mildred
Lopatkovich,
                            *Plaintiff-Appellee*,

          *v.*

UNITED STATES OF AMERICA,
                            *Defendant-Appellant*.

No. 07-4460

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 05-02305—Ann Aldrich, District Judge.

Argued: October 29, 2008

Decided and Filed: January 28, 2009

Before: SILER and McKEAGUE, Circuit Judges; LUDINGTON, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Jonathan S. Cohen, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Michael P. Harvey, MICHAEL P. HARVEY CO., L.P.A., Rocky River, Ohio, for Appellee. **ON BRIEF:** Jonathan S. Cohen, Teresa T. Milton, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Michael P. Harvey, MICHAEL P. HARVEY CO., L.P.A., Rocky River, Ohio, for Appellee.

_____

[*] The Honorable Thomas L. Ludington, United States District Judge for the Eastern District of Michigan, sitting by designation.

---

**OPINION**

---

SILER, Circuit Judge.   The United States appeals the district court's order granting partial summary judgment to Plaintiff Carol Negron (executrix of the estates of Mildred Lopatkovich and Mary Susteric).  The district court determined that departure from the annuity tables provided by I.R.C. § 7520 and Treas. Reg. § 20.2031-7 (the "IRS annuity tables") was warranted when Negron could show that "(1) the value ascribed by the tables is unrealistic and unreasonable; and (2) there is a more reasonable and realistic means by which to determine its fair market value."  Then, it found that "transferability of an annuity would affect its fair market value" and that "the value ascribed by the annuity tables for both estate taxes [was] unrealistic and unreasonable."  Because the IRS annuity tables properly value lottery annuities for estate tax purposes, we **REVERSE** and **REMAND** for proceedings consistent with this opinion.

## I.  BACKGROUND

### A.  Facts

In 1991, Lopatkovich and Susteric, along with an unidentified third party, jointly won the Ohio Super Lotto jackpot of $20 million.  Each winner was entitled to receive 26 annual payments of $256,410.26 for a total payment of $6,666,666.67.  The first checks were received in January 1991.

Both Lopatkovich and Susteric died in 2001 with fifteen more lottery payments remaining: Lopatkovich on November 27 and Susteric on October 31.  These payments were not assignable and could not be used as collateral.  The Lorain County Probate Court appointed Negron executrix of both estates.  Negron elected for each estate to receive a lump sum cash settlement of the remaining prize awards pursuant to Ohio Rev. Code Ann. § 3770.07.

Each estate was required to include the value of the remaining lottery payments on its estate tax return. I.R.C. §§ 2001, 2031, 2039, 2051. Negron reported the value as $2,275,867 on each return based upon the amount that each estate received from the Ohio Lottery Commission. The Commission calculated the distribution - the present value of the remaining lottery payments - using a discount rate of 9.0% from the state valuation tables in effect on January 19, 1991, the date the lottery prize was won.

The Internal Revenue Service ("IRS") determined that the proper values of the remaining lottery payments were $2,775,209 for Lopatkovich and $2,668,118 for Susteric. It used discount rates of 5.0% for Lopatkovich and 5.6% for Susteric from the IRS annuity tables in effect on the dates of death to calculate the present value of the remaining payments.[1] I.R.C. § 7520; Treas. Reg. §§ 20.2031-7(d), 20.7520-1. The IRS assessed an additional tax of $330,302 for Lopatkovich and $141,175 for Susteric. Both estates paid the additional tax, with interest, and filed refund claims. The IRS denied both claims, and the estates filed suit in the district court for a refund.

## B. The District Court's Opinion

The Government and Negron filed cross-motions for summary judgment on the proper method of valuation for annuities: the Government arguing that the IRS annuity tables must be used and Negron arguing that an exception was warranted because the tables created unreasonable and unrealistic results. The district court granted Negron's motion in part and denied the Government's. It noted that there was a circuit split on whether the IRS annuity tables accurately reflect the fair market value of future lottery payments with marketability restrictions: the Second and Ninth Circuits have held that they do not, and the Fifth Circuit along with two other district courts have held that they do. *See Cook v. Commissioner*, 349 F.3d 850, 851 (5th Cir. 2003); *Estate of Gribauskas v. Commissioner*, 342 F.3d 85, 89 (2d Cir. 2003); *Shackleford v. United States*, 262 F.3d 1028, 1029 (9th Cir. 2001); *Anthony v. United States*, No. Civ.A. 02-304-D-M1, 2005

---

[1] I.R.C. § 7520 requires monthly updating of the valuation tables "using an interest rate . . . equal to 120% of the Federal mid-term rate in effect under § 1274(d)(1) for the month in which the valuation date falls." In other words, the tables are tied to a medium term rate that is regularly updated to market rates of interest.

WL 1670697, at \*13 (M.D. La. June 17, 2005); *Estate of Donovan v. United States*, No. Civ.A. 04-10594-DPW, 2005 WL 958403, at \*6 (D. Mass. Apr. 26, 2005). The district court was "more convinced by the reasoning of the Second and Ninth Circuits." It explained that departure from the IRS annuity tables was warranted when the plaintiff could show that "(1) the value ascribed by the tables is unrealistic and unreasonable; and (2) there is a more reasonable and realistic means by which to determine its fair market value." Then, it found that "transferability of an annuity would affect its fair market value" and that "the value ascribed by the annuity tables for both estate taxes [was] unrealistic and unreasonable." Further proceedings were required for Negron to show a more reasonable and realistic valuation method in order to justify departure from the IRS annuity tables.

## II.  JURISDICTION AND STANDARD OF REVIEW

This court has jurisdiction over the Government's interlocutory appeal under 28 U.S.C. § 1292(b). The district court granted the Government's motion to certify the June 4, 2007, summary judgment order for interlocutory appeal to the Sixth Circuit. It found that the Government showed that (1) the summary judgment order involved a controlling question of law, (2) there was a substantial ground for difference of opinion considering the circuit split on the issue, and (3) an immediate appeal would materially advance the ultimate termination of the litigation. *See In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002). We granted the Government's petition for permission to appeal.

We review a district court's summary judgment order de novo, using the same standard as the district court. FED. R. CIV. P. 56(c); *Midwest Media Property, L.L.C. v. Symmes Tp., Ohio*, 503 F.3d 456, 459 (6th Cir. 2007); *Alkire v. Irving*, 330 F.3d 802, 809 (6th Cir. 2003). The court must construe all inferences in favor of the non-moving party. *Alkire*, 330 F.3d at 809.

## III.  ANALYSIS

This appeal boils down to whether the IRS used an appropriate discount rate when  calculating the present value of the remaining lottery payments.  Negron argues that it is unreasonable that the estates were taxed on a distribution amount in excess of that received.  This concern translated into allegations that the IRS annuity tables did not properly take into account marketability restrictions on the lottery annuity and thus did not provide a reasonable assessment of its fair market value.

It is tempting to accept the argument that a person's estate should not be taxed on a lottery annuity amount that it did not receive.  This additional tax burden does not seem fair.  However, the difference in the amount received and the value for federal tax purposes occurred because of the interaction between the state and federal discount rates: Ohio with a discount rate in effect on the date the prize was won and the IRS with a discount rate in effect on the date of death.  *See* I.R.C. 2031; OHIO ADMIN. CODE § 3770:1-8-01(B)(3).  The two discount rates yielded different results because they served different purposes: one approximated the value of the unpaid annuity as if it had been a lump sum from the beginning; the other valued the annuities as an ongoing annuity or a continuing stream of periodic payments.  The lump sum calculation was simply an alternate method of valuing lottery winnings and does not make the IRS method unreasonable.

Negron does not facially challenge the tables, and the claim thus reduces to equity.  The estates chose to take lump sum payments rather than to continue the annuities.  If the estates had chosen to continue the annuities, the Ohio discount rate would not have entered into the equation.  It was the estates' choice that made the results of the IRS assessment particularly unpleasant, and "[i]t is not entirely clear how the non-marketability discount can properly address such an equitable concern, beyond simply reducing the scale of the liability."  *Estate of Donovan v. United States*, No. Civ.A. 04-10594-DPW, 2005 WL 958403, at *5 (D. Mass. Apr. 26, 2005).  Furthermore, equity arguments are insufficient to invalidate properly enacted Treasury Regulations, such as those requiring the use of the IRS annuity tables.  *See Nichols v. United States*, 260 F.3d

637, 654 (6th Cir. 2001).  Despite the differences in discount rates and resulting present value calculations, the Internal Revenue Code and Treasury Regulations provide a reasonable and proper framework for calculating federal tax liability.

## A.  Statutory and Regulatory Framework

An estate tax is imposed "on the transfer of the taxable estate" of every deceased United States citizen or resident.  I.R.C. § 2001.  The taxable estate equals the value of the gross estate less applicable deductions, I.R.C. § 2051, and the gross estate includes "the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated," I.R.C. § 2031.  The value of the gross estate reflects the extent of the decedent's property interest at the time of his death.  I.R.C. § 2033.  The value of annuities obtained after March 3, 1931 are specifically included in the gross estate.  I.R.C. § 2039.

The general rule for valuation is that "[t]he value of every item of property includible in a decedent's gross estate . . . is its fair market value at the time of the decedent's death," and "fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts."  Treas. Reg. § 20.2031-1(b).  However, the specific rule for valuing annuities is that they shall be valued "under tables prescribed by the Secretary," unless the regulations provide otherwise.  I.R.C. § 7520(a)-(b).

The term "annuity" is very broad and references "one or more payments extending over any period of time.  The payments may be equal or unequal, conditional or unconditional, periodic or sporadic."  Treas. Reg. § 20.2039-1(b).  The decedent has a right to receive an annuity if, immediately before death, she had an enforceable right to receive payments in the future.  *Id.*  The fair market value of annuities is the present value of such annuities, determined using the standard IRS annuity tables in Treas. Reg. § 20.2031-7(d), if the valuation date is after April 30, 1999.  Treas. Reg. § 20.2031-7(a), (c); *see also* Treas. Reg. § 20.7520-1(a).

The IRS annuity tables are based on an interest rate component and a mortality component. Treas. Reg. § 20.7520-1(b). The standard § 7520 annuity factors apply to "ordinary annuity interests" (*i.e.*, "the right to receive a fixed dollar amount at the end of each year" for a defined period). Treas. Reg. § 20.7520-3(b)(1)(i)(A). However, special § 7520 annuity factors apply to "restricted beneficial interests" (*i.e.*, "an annuity . . . that is subject to any contingency, power, or other restriction"), and if the interest rate and mortality components of the table do not apply when valuing a particular annuity, then the fair market value of this "other beneficial interest" should be calculated based on all the facts and circumstances. Treas. Reg. § 20.7520-3(b)(1)(ii)-(iii).[2] The Treasury explained that "these regulations [in § 20.7520-3] generally adopt principles established in case law and published IRS positions. There is no indication that Congress intended to supersede this well-established case law and administrative ruling position when it enacted section 7520." T.D. 8630, 1996-1 C.B. 339.

**B.  Existing Case Law on Application of IRS Annuity Tables**

**1. Valuation Dates Prior to the 1995 Effective Date of Treas. Reg. § 20.7520-3(b)**

Every court that considered whether the IRS annuity tables should be used to value future lottery payments with marketability restrictions with valuation dates prior to December 14, 1995, found that the remaining lottery payments were annuities and used the same test for determining whether departure from the standard IRS annuity tables was warranted or required.

> [The tables] must be used to value annuities unless it is shown that the result is so unrealistic and unreasonable that either some modification in the prescribed method should be made, or complete departure from the method should be taken, and a more reasonable and realistic means of determining value is available. The party challenging applicability of the tables has the substantial burden of demonstrating that the tables produce an unreasonable result.

---

[2]There are also exceptions for various Internal Revenue Code sections and for commercial annuities and insurance contracts that do not apply to this case. Treas. Reg. §§ 20.2031-7(a)-(b), 20.7520-3(a).

*Cook v. Commissioner*, 349 F.3d 850, 854-55 (5th Cir. 2003) (quoting *O'Reilly v. Commissioner*, 973 F.2d 1403, 1407 (8th Cir. 1992) (quoting *Weller v. Commissioner*, 38 T.C. 790, 803 (1962))); *see also Estate of Gribauskas v. Commissioner*, 342 F.3d 85, 87 (2d Cir. 2003); *Shackleford v. United States*, 262 F.3d 1028, 1031-32 (9th Cir. 2001). "In enacting § 7520(a)(1) and requiring valuation by the tables, Congress displayed a preference for convenience and certainty over accuracy in the individual case." *Cook*, 349 F.3d at 854 (citing *Bank of California v. United States*, 672 F.2d 758, 760 (9th Cir. 1982)). This results in the presumptive correctness of the IRS annuity tables and the considerable burden for those seeking departure from their use. *See Shackleford*, 262 F.3d at 1032.

Despite the similarity in approach, the circuits split on whether the IRS annuity tables produced an unrealistic and unreasonable result when valuing lottery payments with marketability restrictions. The Ninth Circuit addressed the issue first and reasoned that the "right to transfer is one of the most essential sticks in the bundle of" property rights and that "the statutory restrictions on transfer reduced the fair market value of the right to receive future lottery payments." *Shackleford*, 262 F.3d at 1032. It found that the district court did not err in concluding that application of the IRS annuity tables "did not accurately reflect economic reality" and in reaching an alternative determination of fair market value. *Id.* at 1033.

The Second Circuit agreed with the Ninth Circuit's reasoning that transfer restrictions reduced fair market value. *See Gribauskas*, 342 F.3d at 88. However, it was faced with unique circumstances where the parties stipulated that "transferability restrictions on the prize had an adverse impact on its market value" and the "estate's valuation of the winnings, a figure over $900,000 below that prescribed by the § 7520 standardized valuation tables, accurately reflect[ed] the market discount attributable to those restrictions." *Id.* It explained that the estate met its substantial burden of showing that the tables produced an unreasonable and unrealistic result "by virtue of the stipulations in the record." *Id.* at 89.

The Fifth Circuit disagreed with the reasoning of the Second and Ninth Circuits that marketability restrictions should be considered when valuing a lottery prize. *Cook*, 349 F.3d 850, 856 (5th Cir. 2003). It reasoned that the IRS annuity tables did not produce unreasonable results because "non-marketability of a private annuity is an assumption underlying the annuity tables." *Id.* It also found "it unreasonable to apply a non-marketability discount when the asset to be valued is the right, independent of market forces, to receive a certain amount of money annually for a certain term" because marketability, or the right to alienate, is only "important to the valuation of an asset when capital appreciation is an element of value or when the value would otherwise be difficult to ascertain." *Id.* at 856-57. A marketability factor is not necessary to determine the value of a fixed income stream; the value is readily ascertainable by taking the present value of the remaining payments, using the IRS annuity table discount rates. *Id*. at 857.

The district court in New Hampshire has also declined to follow the Second and Ninth Circuits and has found that the IRS annuity tables produced a reasonable valuation of remaining lottery payments. *See Davis v. United States*, 491 F. Supp. 2d 192, 198-99 (D.N.H. 2007). Estate assets are valued at fair market value. *Id.* at 195. The district court reasoned that a non-marketable right to lottery payments was "likely less valuable" than a freely alienable right but that the proper question was "[h]ow much would a willing and fully informed hypothetical buyer pay for a legally enforceable, virtually risk-free, right to receive . . . annual payments . . . that cannot be assigned to a third party." *Id.* at 194, 196. Such a hypothetical buyer "would be willing to pay something very close to the present value of those [remaining] payments." *Id.* at 197. The court explained that the correct market is not one where the potential buyer is at substantial risk. *Id.* at 196. To provide a proper value for estate tax purposes, the hypothetical buyer must share the same property rights as the estate. *Id.* at 197.

**2.  Valuation Dates After the 1995 Effective Date of Treas. Reg. § 20.7520-3(b)**

For valuation dates after December 13, 1995, every court that has considered whether the IRS annuity tables should be used to value lottery payments or similar structured settlement payments with marketability restrictions has determined that the payments were annuities, used the same "unreasonable and unrealistic results" test to determine that departure from the IRS annuity tables was not warranted, and found that these payments did not qualify for the "restricted beneficial interests" exception in Treas. Reg. § 20.7520-3(b).  *See Anthony v. United States*, 520 F.3d 374, 383-84 (5th Cir. 2008); *Estate of Donovan v. United States*, No. Civ.A. 04-10594-DPW, 2005 WL 958403, at *3, *6 (D. Mass. Apr. 26, 2005); *see also Estate of Gribauskas v. Commissioner*, 116 T.C. 142, 164 (2001) (interpreting Treas. Reg. § 20.7520-3(b), even though it was not directly applicable).

The Fifth Circuit is the only circuit court to have considered whether a decedent's right to receive structured settlement payments, similar to non-assignable lottery payments, was a "restricted beneficial interest" for the purposes of Treas. Reg. § 20.7520-3(b).  *Anthony*, 520 F.3d at 378.  It followed the Tax Court's interpretation of the regulation in *Gribauskas* and held that "annuities were not 'restricted beneficial interests' under Section 20.7520-3(b)."  *Anthony*, 520 F.3d at 383.  "[A] restriction within the meaning of the regulation is one which jeopardizes receipt of the payment stream, not one which merely impacts on the ability of the payee to dispose of his or her rights thereto."  *Id.* (citing *Gribauskas*, 116 T.C. at 165).  It reasoned that the regulation was intended to formalize existing case law, the exception involved restrictions that would undermine the fundamental assumptions of the IRS annuity tables (*e.g.*, when the annuity is expected to exhaust before the last payment or when a measuring life is terminally ill), marketability or transferability is not one of these restrictions, and "beneficial enjoyment" of an annuity  refers to the ability of the corpus to make remaining payments.  *Id.* at 380-83.  It also determined that the "unrealistic and unreasonable results" exception to the use of the IRS annuity tables was available, but

it found that a basis for departure based solely on marketability restrictions was foreclosed by *Cook v. Commissioner*, 349 F.3d 850, 856 (5th Cir. 2003).

The district court of Massachusetts has also agreed with the Tax Court's interpretation of Treas. Reg. § 20.7520-3(b) in *Gribauskas* and found that "[t]he 'restriction' on marketability of lottery earnings is not one which justifies characterizing the proceeds as a 'restricted beneficial interest' under the regulations." *Donovan*, 2005 WL 958403, at *3. Then, it reasoned that the IRS annuity tables must be used unless they produce unrealistic and unreasonable results. *Id.* The district court agreed with the basic economic tenet that an asset subject to marketability restrictions is worth less than an identical asset without marketability restrictions. *Id.* at *4. However, it agreed with *Cook* that the IRS annuity tables did not produce an unreasonable result because non-marketability is an assumption underlying the IRS annuity tables. *Id.* It reasoned the "unassignable nature of the lottery winnings does affect *a* value of the property, simply not the relevant one." *Id.* The relevant value was the value of the property in the hands of the decedent, not the value to a hypothetical buyer holding a very different property interest with substantially greater risks. *Id.* The value to the decedent's estate was not less than "the sum of the guaranteed payments discounted for the time value of money as embraced by the annuity tables." *Id.* at *5.

**C. The IRS Annuity Tables Do Not Produce Unrealistic and Unreasonable Results.**

The IRS properly used the IRS annuity tables to value the remaining lottery payments for estate tax purposes. The tables do not result in an unrealistic or unreasonable valuation, and departure from the tables is not justified or required.

The district court properly reasoned that the IRS annuity tables must be applied unless the party seeking departure meets the substantial burden of showing that (1) the result is so unrealistic and unreasonable that some modification or complete departure should be taken and (2) a more reasonable and realistic means of determining value is

available.**3**   The "unrealistic and unreasonable results exception" ensures that the Treasury Regulations are given proper deference but are not applied when they would be arbitrary, capricious, or manifestly contrary to the statute.  *See Nichols v. United States*, 260 F.3d 637, 644 (6th Cir. 2001).  We agree with the circuit and district courts that have considered this issue, both before and after the effective date of Treas. Reg. § 20.7520-3, and adopt this exception to the use of the IRS annuity tables.  The Treasury adopted, rather than superseded, the principles of well-established case law, including the unreasonable and unrealistic results exception, when it adopted Treas. Reg. § 20.7520-3.  *See, e.g., Anthony v. United States*, 520 F.3d 374, 380-83 (5th Cir. 2008); *see also* T.D. 8630, 1996-1 C.B. 339.

However, the district court incorrectly reasoned that the IRS annuity tables produced an unrealistic and unreasonable result because the transfer restrictions would affect fair market value.  The overarching goal of the Internal Revenue Code is to impose a tax on the value of all of the decedent's property, to the extent of the decedent's interest, at the time of death.  I.R.C. §§ 2031, 2033.  The Treasury Regulations generally provide that the value of every item of property is its fair market value and that the fair market value of an annuity is its present value using the IRS annuity tables.  Treas. Reg. §§ 20.2031-1(b), -7(d).  We agree with the Fifth Circuit that the non-marketability of annuities is an assumption underlying the IRS annuity tables. *See Cook v. Commissioner*, 349 F.3d 850, 856 (5th Cir. 2003) (providing a list of other annuities with marketability restrictions that are valued using the IRS annuity tables). The property right at issue is a legally enforceable, virtually risk-free right to receive annual payments that cannot be assigned to a third party.  *See Davis v. United States*, 491 F. Supp. 2d 192, 196 (D.N.H. 2007).  A marketability factor is not necessary to determine the value of a guaranteed income stream; the value of the decedent's interest at the time of death is readily ascertainable and fairly reflected by the present value of the remaining payments using the IRS annuity tables in effect on the date of death.  *See Cook*, 349 F.3d at 857.

---

**3**The parties do not argue that the right to remaining lottery payments was not an annuity or that the cited Treasury Regulations were either invalid or inapplicable.

This conclusion is not inconsistent with the willing buyer/seller approach to estimating fair market value. *See* Treas. Reg. § 20.2031-1(b). To provide a proper value for estate tax purposes, the hypothetical buyer must hold the same property rights as the estate. *See Davis*, 491 F. Supp. 2d at 197. The relevant value is the value in the hands of the decedent, not the value to a hypothetical buyer holding a different property interest with substantially greater risks. *See Estate of Donovan v. United States*, No. Civ.A. 04-10594-DPW, 2005 WL 958403, at \*5 (D. Mass. Apr. 26, 2005).

Finally, the district court did not err in failing to address Treas. Reg. § 20.7520-3(b). The regulation applied because the valuation dates, or dates of death, were after the effective date of December 13, 1995. However, as mentioned above, Treas. Reg. § 20.7520-3 does not provide the only situations justifying departure from the IRS annuity tables, and Negron was arguing that the "unreasonable and unrealistic results" exception justified departure in her motion for partial summary judgment, which the district court granted. The district court did not need to consider whether the "restricted beneficial interest" exception in Treas. Reg. § 20.7520-3(b) applied when determining that the "unrealistic and unreasonable results" exception applied.

## IV. CONCLUSION

Because the IRS annuity tables do not produce an "unrealistic and unreasonable" value of the lottery annuity, we **REVERSE** and **REMAND** to the district court for proceedings consistent with this opinion.